William E. GREEN, Appellant,

v.

John W. DeCAMP, Douglas K. Bereuter, Ernie Chambers, Donald N. Dworak, Steven Fowler, William E. Nichol, Barry L. Reutzel, Loren Schmit and Toney J. Redman, Appellees.

No. 79–1270.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 9, 1979.

Decided Jan. 4, 1980.

Duane L. Nelson, Lincoln, Neb., for appellant.

Melvin K. Kammerlohr, Asst. Atty. Gen., Lincoln, Neb., for appellee; Paul L. Douglas, Atty. Gen., Lincoln, Neb., on brief.

Before ROSS and STEPHENSON, Circuit Judges, and McMANUS,* District Judge.

STEPHENSON, Circuit Judge.

William E. Green appeals from the district court's[1] order granting defendants' motion to dismiss the complaint for failure to state a claim upon which relief could be granted. Green's complaint seeking monetary and injunctive relief under 42 U.S.C. § 1983 alleged that defendants—eight state senators who are members of a Select Committee of the Nebraska Legislature and the counsel for the committee—deprived Green of liberty or property interests without due process of law in violation of the fourteenth amendment. This was allegedly done by exceeding their legislative authority in preparing and releasing a committee report, which Green contends falsely charged that he, as chief of police for McCook, Nebraska, knowingly and corruptly conducted an improper investigation of a possible murder. The district court held that the complaint failed to allege or show Green was deprived of a property or liberty interest protected by the fourteenth amendment, and further that the state senators and committee counsel were protected by official immunity. We affirm.

By legislative resolution the Nebraska Legislature had created a Select Committee "to review the operation of the Criminal and Drug Divisions in the Nebraska State Patrol." During its review, the Select Committee investigated the April 25, 1973 death of Ida G. Fitzgibbons in McCook, Nebraska. There had been serious questions as to whether the death was the result of homicide or suicide. After investigation, Chief Green had ruled it a suicide. The Nebraska State Patrol conducted a follow-up investigation of the death at the request of the county attorney, and after pressure from local citizens. It was the alleged inadequate review by the state patrol which the Select Committee was investigating. The Committee conducted hearings, and prepared and released a report made available to the public entitled the "IDA G. FITZGIBBONS REPORT." In addition to discussions and conclusions regarding the state patrol investigation, the report reached the following conclusions concerning the local investigation:

> The original investigation conducted under the authority of Chief Green appears to be totally inadequate, lacking in professionalism, and the entire conduct of Chief Green suggests that there may have been an intentional effort by Green, for whatever reasons, to justify a suicide theory during the coroner's inquest at the expense of the facts.

On appeal Green alleges: (1) He was deprived of a liberty or property interest protected by the Due Process Clause of the fourteenth amendment; (2) therefore he has stated a cognizable claim under 42 U.S.C. § 1983; and (3) legislative immunity does not extend to the defendants' activities in this case.

■ In order to sustain an action under 42 U.S.C. § 1983, Green must allege a deprivation of a constitutional right. Here

---

* The Honorable Edward J. McManus, Chief Judge, United States District Court for the Northern District of Iowa, sitting by designation.

1. The Honorable Warren K. Urbom, Chief Judge, United States District Court for the District of Nebraska.

Green contends the action of the committee resulted in a deprivation of a property or liberty interest without being given due process of law, in violation of the fourteenth amendment. We agree with the district court that *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) is controlling in the present case. *Paul* involved the circulation of a flyer by defendants, various chiefs of police, which listed plaintiff as an "active shoplifter." The Court held an action for injunctive and monetary relief under 42 U.S.C. § 1983 was properly dismissed because, although the imputation of a crime may be defamation per se, the stigma to one's reputation was not a property or liberty interest protected by the fourteenth amendment. Green's allegations of a loss of business as a result of the damage to his reputation, without more, does not change this conclusion. A similar allegation was made in *Paul v. Davis, supra*, 424 U.S. at 697, 96 S.Ct. 1155.

Green argues that *Paul* is of questionable validity, and this present case should be governed by *Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971). While concededly there is language in *Constantineau* which would support Green's position, in *Paul* the Supreme Court expressly narrowed and distinguished that case. In *Constantineau* the chief of police caused to be posted in a retail liquor store a notice that sales or gifts of alcohol to plaintiff were forbidden. The decision in *Paul* stated that the posting of the plaintiff's name in *Constantineau* involved a deprivation of a property interest protected by the fourteenth amendment, because it "deprived the individual of a right previously held under state law—the right to purchase or obtain liquor * * *." *Paul v. Davis, supra*, 424 U.S. at 708, 96 S.Ct. at 1164. No such loss of a right granted by state law existed in *Paul*, and similarly we find no such right or interest here. Therefore, *Paul*, and not *Constantineau*, is controlling here.

Green argues that *Jenkins v. McKeithen*, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969) requires that due process attach to the action of the Select Committee. *Jen-*kins involved a committee established for a different purpose, and one that performed a different function.

> Rather, everything in the Act points to the fact that [the Commission] is concerned only with exposing violations of criminal laws by specific individuals. In short, the Commission very clearly exercises an accusatory function; it is empowered to be used and allegedly is used to find named individuals guilty of violating the criminal laws of Louisiana and the United States and to brand them as criminals in public.

> \*    \*    \*    \*    \*    \*

> * * * In the present context, where the Commission allegedly makes an actual finding that a specific individual is guilty of a crime, we think that due process requires the Commission to afford a person being investigated the right to confront and cross-examine the witnesses against him * * *.

395 U.S. 427–429, 89 S.Ct. 1852. This clearly distinguishes our situation, where the committee made no actual findings that Green was guilty of a crime, but instead reached conclusions concerning local police practices, which were clearly incidental to the committee's investigation of the state patrol. The situation is more similar to *Hannah v. Larche*, 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960), where the issue was whether persons under investigation by the Civil Rights Commission were entitled to certain due process rights. The Court determined that the commission's function was investigative and did not require the requested procedures.

> [T]he respondents contend and the court below implied, that such procedures are required since the Commission's proceedings might irreparably harm those being investigated by subjecting them to public opprobrium and scorn, the distinct likelihood of losing their jobs, and the possibility of criminal prosecutions. * * * [E]ven if such collateral consequences were to flow from the Commission's investigations, they would not be the result

of any affirmative determinations made by the Commission, and they would not affect the legitimacy of the Commission's investigative function.

363 U.S. at 442–43, 80 S.Ct. at 1515.

We conclude the district court properly determined that Green did not allege sufficient facts to demonstrate he had been denied a constitutional right.[2] He therefore has no cause of action on the basis of 42 U.S.C. § 1983.

Additionally, we are persuaded that the district court was correct in concluding that the defendants are protected by the doctrine of official immunity.

█ The existence of official immunity for state legislators from suit under 42 U.S.C. § 1983 was established, and its scope defined, in *Tenney v. Brandhove*, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951). Brandhove brought an action alleging a state legislative committee's actions deprived him of first amendment rights, equal protection, and due process. The committee had read into the record statements concerning the alleged criminal record of plaintiff, and asked local officials to bring criminal charges against him. The Court held that the passage of the Civil Rights Acts did not impinge on traditional legislative immunity.

Investigations, whether by standing or special committees, are an established part of representative government. Legislative committees have been charged with losing sight of their duty of disinterestedness. In times of political passion, dishonest or vindictive motives are readily attributed to legislative conduct and as readily believed. Courts are not the place for such controversies. Self-discipline and the voters must be the ultimate reliance for discouraging or correcting such abuses. The courts should not go beyond the narrow confines of determining that a committee's inquiry may fairly be deemed within its province. * * *

\* \* \* \* \* \*

\* \* \* We conclude only that here the individual defendants and the legislative committee were acting in a field where legislators traditionally have power to act, and that the statute of 1871 does not create civil liability for such conduct.

341 U.S. at 377–79, 71 S.Ct. at 789 (footnotes omitted).

█ This privilege extends to committee counsel as well as the state senators "insofar as the conduct of the [aid] would be a protected legislative act if performed by the Member himself." *Gravel v. United States*, 408 U.S. 606, 618, 92 S.Ct. 2614, 2623, 33 L.Ed.2d 583 (1972). The Supreme Court has stated that, regarding legislative immunity, it "draw[s] no distinction between the Members [of a subcommittee] and the Chief Counsel." *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 507, 95 S.Ct. 1813, 1823, 44 L.Ed.2d 324 (1975). The district court properly concluded counsel acted only in the role of legislative aide to the committee, and was immune to the same extent as the senators.

█ Green correctly contends that if the committee exceeds legitimate legislative activity, there is no immunity for those acts which are not essential to the legislative process. *See Doe v. McMillan*, 412 U.S. 306, 313, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973). We have already decided the committee was within the legislative authority in reaching its conclusions concerning Chief Green's investigation, and that those conclusions were not of the accusatory or adjudicative nature involved in *Jenkins v. McKeithen*, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). Green next alleges the committee was not acting essential to its legislative function in preparing the committee report and releasing it to the public and press.

The immunity issue in this case is very similar to that in *Doe v. McMillan*, 412 U.S. 306, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973). In that case parents of District of Columbia

---

**2.** We note, moreover, that before granting the motion to dismiss Judge Urbom granted Green opportunity to amend his complaint. Green failed to do so.

school children brought an action seeking damages and declaratory and injunctive relief on the basis of invasion of privacy resulting from the dissemination of a congressional report on the district's school system which included the identification of some students in derogatory contexts. The Court held that authorizing the publication and distribution of the report was a legislative function protected by the Speech or Debate Clause.

> Congressmen and their aides are immune from liability for their actions within the "legislative sphere," *Gravel v. United States, supra*, 408 U.S. at 624–625, [2614], at 2626–2627 of 92 S.Ct., even though their conduct, if performed in other than legislative contexts, would in itself be unconstitutional or otherwise contrary to criminal or civil statutes. Although we might disagree with the Committee as to whether it was necessary, or even remotely useful, to include the names of individual children in the evidence submitted to the Committee and in the Committee Report, we have no authority to oversee the judgment of the Committee in this respect or to impose liability on its Members if we disagree with their legislative judgment. The acts of authorizing an investigation pursuant to which the subject materials were gathered, holding hearings where the materials were presented, *preparing a report where they were reproduced, and authorizing the publication and distribution of that report were all "integral part[s] of the deliberative and communicative processes* by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House." *Id.*, at 625, 92 S.Ct. [2614], at 2627. As such, the acts were protected by the Speech or Debate Clause.

412 U.S. at 312–13, 93 S.Ct. at 2025 (emphasis added).

■ Legislative immunity clearly does not extend to a private republication of documents which had been made public at a committee hearing, however. *Gravel v. United States, supra*, 408 U.S. at 625, 92 S.Ct. 2614. The issue here is whether an allegation that the report was "released to news reporting and publishing agencies" is more like "authorizing the report for publication," which *Doe v. McMillan* concluded was legitimate legislative activity, or more like a private republication. We agree with the district court that our situation is most akin to *Doe v. McMillan*. The recent Supreme Court case of *Hutchinson v. Proxmire*, —— U.S. ——, 99 S.Ct. 2675, 61 L.Ed.2d 411 (1979) supports this conclusion. In distinguishing *Doe v. McMillan* from the news release of Senator Proxmire in the case before it, the Court in *Proxmire* concluded:

> Voting and preparing committee reports are the individual and collective expressions of opinion within the legislative process. As such, they are protected by the Speech or Debate Clause. Newsletters and press releases, by contrast, are primarily means of informing those outside the legislative forum; they represent the views and will of a single Member.

99 S.Ct. at 2687.

■ Thus, on the basis of *Doe v. McMillan*, we conclude the mere release "to news reporting and publishing agencies" of the Fitzgibbons report was a legitimate legislative activity. All of the defendants are therefore immune from suit under 42 U.S.C. § 1983 on the basis of the legislative immunity doctrine announced in *Tenney v. Brandhove, supra*, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951).

The district court is affirmed.