Jay K. HARTLEY, Plaintiff,

v.

Camden R. FINE, Ray S. James, Richard J. King, John R. Russell, Defendants.

No. 82–4284–CV–C–5.

United States District Court, W.D. Missouri, C.D.

June 21, 1984.

John R. Lewis, Springfield, Mo., Dale C. Doerhoff, Jefferson City, Mo., for plaintiff.

Michael Boicourt, Asst. Atty. Gen., Jefferson City, Mo., for defendants Fine, James and King.

Alex Bartlett, Jefferson City, Mo., Paul L. Bradshaw, Springfield, Mo., for defendant Russell.

SCOTT O. WRIGHT, District Judge.

Pending before the Court is defendant John R. Russell's Motion for Summary Judgment. For the following reasons, defendant Russell's motion will be denied.

This is an action brought pursuant to 42 U.S.C. § 1983 in which the plaintiff claims that he was discharged from his employment with the Missouri Department of Revenue because of his political affiliation, and that he was denied procedural due process prior to his termination. Named as defendants are Ray S. James, former Director of the Department of Revenue for the State of Missouri; Camden R. Fine, Director of the Department of Revenue's Division of Taxation; Richard J. King, present Director of the Missouri Department of Revenue; and John R. Russell, a Missouri State Senator.

Plaintiff's complaint makes the following allegations. On January 14, 1982, defendant Fine terminated plaintiff's employment as Manager of the Missouri Department of Revenue's Bureau of Compliance. Prior to his discharge, plaintiff had been an employee of the Missouri Department of Revenue for a period of eight years. During the course of his employment, plaintiff was a member of the Democratic Party. Plaintiff claims that after "the inauguration of Governor Bond, a Republican, in January, 1981, plaintiff came under pressure from certain Republican officeholders, most notably defendant Russell, a State Senator representing a constituency in the southwest Missouri area, with such pressure also being brought by all defendants and their agents, but that plaintiff resisted such pressure." Plaintiff's Complaint at paragraph 14.

The plaintiff contends that the following facts previously adduced by affidavit or deposition will be established at trial. Prior to August 17, 1981, there were no problems concerning plaintiff's job performance as Manager of the Compliance Bureau. Rather, plaintiff's last periodic evaluation form contained ratings all of which were in the "very good" category. In 1980, plaintiff received a merit increase in salary. On August 17, 1981, defendant Russell sent a letter to defendant James, then the Director of Revenue, in which Russell suggested that the plaintiff should be removed from his position or transferred. According to deposition testimony, Russell previously stated that he had instructed James to fire the plaintiff in retaliation for the firing of a Republican state employee and because there were too many Democrats in high-paying state jobs.

The plaintiff further contends that on December 1, 1981, there was a meeting involving the Governor, King, and Russell, during which the status of the plaintiff's employment was discussed. Subsequently, James ordered the plaintiff's superior, Bill Lane, to fire the plaintiff, but Lane refused to do so. James then removed Lane, appointed defendant Fine, and instructed Fine to remove plaintiff from his position. Thereafter, without discussing the matter with the plaintiff, Fine issued the letter terminating the plaintiff's employment.

In response to these allegations, defendant Russell contends that his efforts to have the plaintiff removed were not based on political motives, but were instead an effort on his part to respond to complaints by constituents regarding mismanagement and inefficiency in connection with the plaintiff's employment. Russell argues that summary judgment in his favor is appropriate because he is immune from damages by reason of legislative immunity.

The doctrine of legislative immunity is rooted in the Speech or Debate Clause of the United States Constitution and provides that legislators engaged in the sphere of legitimate legislative activity should be protected not only from the consequences of the litigation but also from the burden of defending themselves. *Dombrowski v. Eastland,* 387 U.S. 82, 87 S.Ct. 1425, 1427, 18 L.Ed.2d 577 (1967). The immunity afforded by the Speech or Debate Clause, however, does not extend to

a state legislator. *United States v. Gillock*, 445 U.S. 360, 100 S.Ct. 1185, 63 L.Ed.2d 4 (1980). Nonetheless, it is well-established that members of a state legislature are afforded absolute common law immunity from damage suits brought pursuant to 42 U.S.C. § 1983. *Tenney v. Brandhove*, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951). *See also Gorman Towers, Inc. v. Bogoslavsky*, 626 F.2d 607, 613 (8th Cir.1980); *Green v. DeCamp*, 612 F.2d 368, 371 (8th Cir.1980).

The immunity recognized by *Tenney* is only absolute within its scope, however, and coverage extends only to acts done "within the sphere of legitimate legislative activity." *Tenney, supra*, 71 S.Ct. at 788. In *Tenney*, the Supreme Court concluded that "to find that a committee's investigation has exceeded the bounds of legislative power it must be obvious that there was a usurpation of functions exclusively vested in the judiciary or the executive." *Tenney, supra*, 71 S.Ct. at 789.

Defendant Russell contends that his alleged motive in urging that the plaintiff be discharged is irrelevant in the determination of whether his acts fall within the sphere of legitimate legislative activity. The Supreme Court in *Tenney* noted that the "claim of unworthy purpose does not destroy the privilege. Legislators are immune from deterrents to the uninhibited discharge of their legislative duty, not for their private indulgence but for the public good." *Tenney, supra*, 71 S.Ct. at 788. *See also Hampton v. City of Chicago*, 484 F.2d 602, 606 (7th Cir.1973) (in determining whether prosecutor's conduct falls within scope of absolute immunity, proper focus is on character of the prosecutor's conduct rather than his alleged motivation). Thus, it is clear that the allegation that plaintiff's termination was politically motivated is not a factor to be considered in determining whether Russell's conduct is entitled to legislative immunity.

The issue of political motive notwithstanding, the essential question is whether the sphere of "legitimate legislative activity" includes the conduct of a state legislator who, after conducting his own individual investigation not pursuant to any committee activity or authorization, pressures members of the State's executive branch to discharge an employee of the executive branch.

Initially, the Court takes note of the fact that, unlike many of the cases involving legislative immunity, the instant case does not involve the conduct of a legislator acting pursuant to his duties arising out of membership in a legislative committee. *Compare Tenney v. Brandhove, supra*, 71 S.Ct. 783 (committee and individual members acting in sphere of legitimate legislative activity); *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979) (members of regional planning authority's governing board entitled to absolute immunity to extent they were acting in legislative capacity); *Gorman Towers, Inc. v. Bugoslavsky, supra*, 626 F.2d 607 (city directors immune with respect to enactment of zoning adjustment); and *Green v. DeCamp, supra*, 612 F.2d 368 (members of senate committee entitled to immunity since preparation of report was within scope of committee affairs). These decisions reflect the fact that committee investigations, "whether by standing or special committees, are an established part of representative government." *Tenney v. Brandhove, supra*, 71 S.Ct. at 789. Similarly, statements and activities by legislators occurring after the dissolution of a legislative committee have been held to be outside the scope of legitimate legislative activity. *See Cole v. Gray*, 638 F.2d 804 (5th Cir.1981) (actions taken by state legislators during pendency of committee were protected, but actions taken after the committee dissolved were outside coverage of immunity). Accordingly, the actions taken by defendant Russell must be analyzed in light of the fact that they were not the product of a legislative committee investigation. Rather, they were the result of an individual legislator acting on his own initiative.

There is no question, however, that the legitimate legislative activity of a state senator may include individual investigation. The plaintiff's allegations in the instant case, however, suggest that Russell went beyond the scope of an ordinary investigation of constituent complaints and exercised his influence to cause the firing of a state employee. The Court attaches significance to the fact that Russell allegedly did not simply complete an investigation of employee incompetence and report his findings to the appropriate authorities; instead, it is alleged that Russell urged members of the executive branch to remove the plaintiff from his position.

Therefore, the decisive issue is whether Russell's alleged activities were substantially related to his duties as a legislator or whether Russell was allegedly operating in an area which exceeded his role as a state senator. The Supreme Court has stated that it is

> well known, of course, that Members of the Congress engage in many activities other than the purely legislative activities protected by the Speech or Debate Clause. These include a wide range of legitimate "errands" performed for constituents, the making of appointments with Government agencies, assistance in securing Government contracts, preparing so-called newsletters to constituents, news releases, and speeches delivered outside the Congress. The range of these related activities has grown over the years. They are performed in part because they have come to be expected by constituents, and because they are a means of developing continuing support for future elections. Although these are entirely legitimate activities, they are political in nature rather than legislative, in the sense that term has been used by the Court in prior cases. But it has never been seriously contended that these political matters, however appropriate, have the protection afforded by the Speech or Debate Clause. . . .
>
> In no case has this Court ever treated the clause as protecting all conduct *relating* to the legislative process. In every

case thus far before this Court, the Speech or Debate Clause has been limited to an act which was clearly a part of the legislative process—the *due* functioning of the process.

*United States v. Brewster,* 408 U.S. 501, 92 S.Ct. 2531, 2537–39, 33 L.Ed.2d 507 (1972) (emphasis original). The Court notes that the Supreme Court's language in *Brewster* describing the nature of the legislative function was an analysis of the scope of the Speech or Debate Clause. Defendant Russell in the instant case, however, claims legislative immunity based not on the Speech or Debate Clause, but rather based on common law. There is no question that the immunity afforded by the Speech or Debate Clause is not applicable to state legislators. *Lake Country Estates, supra,* 99 S.Ct. at 1179. Nonetheless, the language of the Supreme Court in *Brewster* is at least somewhat persuasive in determining the "sphere of legitimate legislative activity" as defined in *Tenney.* Similarly, the Supreme Court has stated that the Speech or Debate Clause has not been extended "beyond the legislative sphere," and that simply because

> Senators generally perform certain acts in their official capacity as Senators does not necessarily make all such acts legislative in nature. Members of Congress are constantly in touch with the executive branch of the government and with administrative agencies—they may cajole, and exhort with respect to the administration of a federal statute—but such conduct, though generally done is not protected legislative activity. "No argument is made, nor do we think it could be successfully contended, that the Speech or Debate Clause reaches conduct, [such as an] attempt to influence the Department of Justice, that is in no wise related to the due functioning of the legislative process."

*Gravel v. United States,* 408 U.S. 606, 92 S.Ct. 2614, 2627, 33 L.Ed.2d 583 (1972), quoting *United States v. Johnson,* 383 U.S. 169, 86 S.Ct. 749, 751, 15 L.Ed.2d 681 (1966).

The ultimate question, however, is whether defendant Russell was "acting in

the sphere of legitimate legislative activity," that is, whether he was "acting in a field where legislators traditionally have the power to act...." *Tenney, supra,* 71 S.Ct. at 788–89. With respect to the hiring and firing of Department of Revenue employees, Missouri statutes make it clear that such activities are in the province of the executive branch of the state government. "The department of revenue is in charge of the director of revenue. The director shall be appointed by the Governor, by and with the advice and consent of the Senate, and shall serve at the pleasure of the Governor." Mo.Rev.Stat. 32.010 (1978). In addition, the Director of Revenue may:

> (1) Initiate, order and direct the arrangement and rearrangement of the employees, quarters, facilities and equipment in the Department of Revenue and each division of the department which is under his supervision;
>
> (2) Employ and remove assistants, clerks, and other employees in the Department of Revenue and each of the divisions of the department which are under his supervision as the work of the Department and its divisions require, and fix their compensation within the limits of the appropriation.

*Id.* § 32.050.

In the instant case, the plaintiff has alleged that he was an employee of the De-partment of Revenue from April, 1967 to June, 1973, and from March, 1974 to January 14, 1982. From June 1, 1978, to January 14, 1982, plaintiff served as the Manager of the Bureau of Compliance, Division of Taxation of the Missouri Department of Revenue. Accordingly, the decision to continue or terminate the plaintiff's employment was vested exclusively within the authority of the Director of Revenue, a member of the executive branch of the Missouri State government.

As previously noted, the Supreme Court has stated that to find that a legislative investigation "has exceeded the bounds of legislative power it must be obvious that there was a usurpation of functions exclusively vested in the Judiciary or the Executive." *Tenney, supra,* 71 S.Ct. at 789. In the instant case, defendant Russell is alleged to have pressured members of the executive branch to terminate an employee of that branch. The authority to make such a decision, however, lies solely with those in the executive branch itself. Accordingly, the alleged actions of Senator Russell in seeking plaintiff's discharge,[1] although perhaps taken in response to legitimate constituent complaints, do not fall within the sphere of legislative activity.[2]

The suggestion by Senator Russell that the plaintiff should be discharged from his long-standing employment with

---

1. It is important that the Senator's investigatory actions be distinguished from his alleged attempts to force the plaintiff's termination. There is little question that legislative investigations "are an established part of representative government," *Tenney, supra,* 71 S.Ct. at 783, and in general legislative investigation of government inefficiency is considered to be the exercise of proper legislative authority. The activity alleged in this case which deprives the Senator of his immunity is not his investigation of alleged incompetence within the Department of Revenue; rather, it is his alleged actions in pressuring the members of the executive branch to discharge one of its own employees that falls outside the sphere of legislative activity.

2. In *Davis v. Passman,* 544 F.2d 865 (5th Cir. 1977), *modified on other grounds,* 571 F.2d 793 (5th Cir.1978), *reversed on other grounds,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979),

the Fifth Circuit held that the Speech or Debate Clause does not extend to a United States congressman who allegedly discharged a female employee of his own staff on account of her sex in violation of the Fifth Amendment. The Court noted that such dismissal actions are not related to the passage of proposed legislation or to other matters within the jurisdiction of Congress. 544 F.2d at 880. "When members of Congress dismiss employees they are neither legislating nor formulating legislation." *Id.* While *Davis* may be distinguished from the instant case in that *Davis* is based on the Speech or Debate Clause and involves the termination of a legislator's own staff member, nonetheless, this Court is persuaded by the *Davis* court's admonition that "[p]eripheral or tangential activities of a representative must not be confused with the legislative core." *See id.*

the Department of Revenue was not the result of any committee action nor was it in any way essential to the legitimate functions of the state legislature. Although individual investigation of government inefficiency may fall within the scope of legislative authority, the application of pressure by a legislator on the executive branch to make a decision in an area vested exclusively within the executive branch cannot be classified as legitimate legislative activity. As stated by the Supreme Court, although congressmen "are constantly in touch with the Executive Branch of the Government and with administrative agencies—they may cajole, and exhort with respect to the administration of a federal statute—but such conduct, though generally done, is not protected legislative activity." *Gravel, supra,* 92 S.Ct. at 2614. Accordingly, Senator Russell's motion for summary judgment on the basis of legislative immunity will be denied.

Senator Russell contends in the alternative that summary judgment is appropriate, arguing that there is no issue of material fact in dispute regarding his contention that plaintiff's firing was not politically motivated.

 There are stringent limitations on the use of summary judgment, and such relief should not be granted unless the movant has established his right to judgment with such clarity as to leave no room for controversy that the opponent is not entitled to recovery under any discernible circumstances. *Robert Johnson Grain Co. v. Chemical Interchange Co.,* 541 F.2d 207 (8th Cir.1976). The Court must view the motion in the light most favorable to the party opposing the motion and give the opponent all reasonable inferences deducible at trial. *Bellflower v. Pennise,* 548 F.2d 776 (8th Cir.1977). Summary judgment is inappropriate where motive and intent are important or where credibility is a factor. *Re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions,* 538 F.2d 180 (8th Cir.1976); *Goldinger v. Boron Oil Co.,* 375 F.Supp. 400 (D.C.Pa. 1974).

Plaintiff's response to Russell's motion for summary judgment sufficiently demonstrates that there are material facts in dispute. Thus, the entry of summary judgment in favor of Russell would be inappropriate. Moreover, summary judgment should not be entered in a case such as this one where the issue of the defendant's motive is crucial. Accordingly, it is hereby

ORDERED that defendant Russell's motion for summary judgment is denied.