**Jay K. HARTLEY, Appellee,**

v.

**Camden R. FINE, Ray S. James, Paul S. McNeill, and John T. Russell, Appellants.**

**Jay K. HARTLEY, Appellant,**

v.

**Camden R. FINE, Ray S. James, Paul S. McNeill, and John T. Russell, Appellees.**

**Nos. 84–1789, 84–2441.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 14, 1985.

Decided Dec. 31, 1985.

Dale C. Doerhoff, Jefferson City, Mo., and John R. Lewis, Springfield, Mo., for appellants.

Charles Blackmar, Kansas City, Mo., Alex Bartlett and Michael Boicourt, Jefferson City, Mo., for appellee.

Before ROSS, Circuit Judge, BRIGHT, Senior Circuit Judge, and BOWMAN, Circuit Judge.

BRIGHT, Senior Circuit Judge.

Jay K. Hartley, former bureau manager of the Missouri Department of Revenue, brought this civil rights action under 42 U.S.C. § 1983 seeking reinstatement and damages from his supervisors and a state senator (John T. Russell). Hartley alleges that the defendants terminated his employment for partisan political reasons in violation of his first amendment rights. After a trial in which the jury denied Hartley damages, and the district court[1] denied his claim for the equitable relief of reinstate-

---

1. The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri.

ment, Hartley brings this appeal. For reversal, Hartley contends that the district court erred in: (1) denying his claim for equitable relief based on a violation of procedural due process; (2) refusing to instruct the jury that it should hold for Hartley if it concluded that political affiliation was a "motivating factor" in the discharge; (3) instructing the jury that a good faith defense was available to defendants; and (4) instructing the jury that it must rule for the defendants if Hartley would have been terminated regardless of his political affiliation. In addition to seeking an affirmance on the merits of the judgment, Senator Russell separately appeals from the judgment of the district court, 595 F.Supp. 83, denying his motion for summary judgment based on legislative immunity. We affirm.

## I. BACKGROUND.

Hartley brought this civil rights action against: the Director of the Division of Taxation and Collection, Camden R. Fine, who terminated Hartley; the former Director of Revenue, Ray S. James, who allegedly ordered the dismissal; the Director of Revenue (who at the time of suit was Richard J. King and who has been succeeded by Paul S. McNeill); and Missouri State Senator John T. Russell.

Hartley, a Democrat, alleged that he was discharged from his position as manager of the Compliance Bureau of the Missouri Department of Revenue for partisan political reasons. Essentially, Hartley claimed that his discharge was the result of a letter from Senator Russell, a Republican, to Ray James, a Republican, in which Russell stated his belief that problems in the Compliance Bureau would not be resolved until Hartley was removed or transferred. Hartley's supervisors contended that Hartley's job performance was unacceptable and he was discharged for just cause.

Prior to his discharge, Hartley received no opportunity to respond to the termination decision. After his termination, Hartley sought to overturn his dismissal under Missouri statutory procedures. Hartley contested his discharge before the

Missouri Personnel Advisory Board. After a hearing, the Board determined that under Missouri law, Hartley had no right to the Board's post termination procedures.

Hartley then filed this civil rights suit in the United States District Court. At trial, Hartley contended that he held a non-policymaking position and, therefore, could not be dismissed for political reasons under *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980) and *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). By its verdict, the jury rejected Hartley's claim that political reasons contributed to the discharge. In denying Hartley's request for the equitable relief of reinstatement, the district court concluded that Hartley's "employment was terminated solely because of his job performance."

## II. DISCUSSION.

### A. Procedural Due Process.

The record makes clear that Hartley received no pretermination process, and that under Missouri law he could avail himself of no post termination procedures. Although at trial the district court concluded that Hartley held a non-policymaking position for federal constitutional purposes, the Missouri Personnel Advisory Board determined that for state law purposes Hartley held a policymaking position and, as such, was not entitled to a statutory post-discharge hearing. Hartley contends that under Missouri law he had a property right in continued employment, and, that as a matter of law, the State deprived him of this property right without due process. We disagree.

■ Although it appears that Hartley failed to raise this contention below, we will address it here because it is raised as a matter of law. Analysis of the Missouri statutes discloses that, as a non-merit system employee, Hartley possessed no property right in continued employment. Mo. Rev.Stat. § 36.030(1) (1981). As such, Hartley could not obtain statutory procedures accorded merit system employees un-

der Mo.Rev.Stat. § 36.390(5) (1981).[2] Hartley argues, however, that under Mo.Rev. Stat. § 36.390(7) and (8) he was entitled to substantially the same procedures due merit system employees. Hartley cites no cases in support of this contention. In fact, subsections (7) and (8) of section 36.-390 do not explicitly confer on Hartley any such right to post termination procedure.[3] In addition, the only record evidence relating to this contention is the Missouri Personnel Advisory Board's decision that Hartley held a policymaking position exempt from the requirement of post termination

process available to state merit employees. Because Hartley failed to demonstrate that he had a property interest in his continued employment or that he was statutorily entitled to procedural due process regarding his termination, we reject this contention.

## B.  Jury Instructions.

### 1.  The Propriety of the *Mt. Healthy City School District Board of Education v. Doyle* Instruction.

■ Instructions No. 6 and 8[4] directed the jury to return a verdict for Hartley, in

**2.**  Mo.Rev.Stat. § 36.390(5) provides:

   Any regular employee who is dismissed or involuntarily demoted for cause or suspended for more than five working days may appeal in writing to the board within thirty days after the effective date thereof, setting forth in substance his reasons for claiming that the dismissal, suspension or demotion was for political, religious, or racial reasons, or not for the good of the service. Upon such appeal, both the appealing employee and the appointing authority whose action is reviewed shall have the right to be heard and to present evidence at a hearing which, at the request of the appealing employee, shall be public. At the hearing of such appeals, technical rules of evidence shall not apply. After the hearing and consideration of the evidence for and against a suspension or demotion, the board shall approve or disapprove such action and in the event of a disapproval, the board shall order the reinstatement of the employee to his former position and the payment to the employee of such salary as he has lost by reason of such suspension or demotion. After the hearing and consideration of the evidence for and against a dismissal, the board shall approve or disapprove such action and may make any one of the following appropriate orders:

   (1) Order the reinstatement of the employee to his former position and the payment to the employee of part or all of such salary as has been lost by reason of such dismissal;

   (2) Sustain the dismissal of such employee, unless the board finds that the dismissal was based upon political, social, or religious reason, in which case it shall order the reinstatement of the employee to his former position and the payment to the employee of such salary as has been lost by reason of such dismissal;

   (3) Except as provided above the board may sustain the dismissal, but may order the director to recognize reemployment rights for the dismissed employee under section 36.240, in an appropriate class or classes, or may take steps to effect the transfer of such employee

to an appropriate position in the same or another division of service.

**3.**  Mo.Rev.Stat. § 36.390(7) provides: "The provisions for appeals provided in subsection 5 for dismissals of regular merit employees *may* be adopted by non-merit agencies of the state for any or all employees of such agencies." (Emphasis added.) Section 36.390(8) provides that non-merit agencies shall adopt substantially similar post termination procedures except as to individuals in policymaking positions.

**4.**  Instruction No. 6 provides:

   Your verdict must be for the plaintiff and against defendant James if you believe:

   First: That the plaintiff's political affiliation was a substantial factor in defendant James's decision to terminate the plaintiff from his employment as Manager of the Department of Revenue's Bureau of Compliance; and

   Second: That as a direct result of James's conduct the plaintiff was deprived of his First Amendment rights;

   unless you believe that the plaintiff is not entitled to recover by reason of Instructions No. 7 or 10.

   Instruction No. 8 provides:

   Your verdict must be for the plaintiff and against defendant Russell if you believe:

   First: That defendant Russell urged Ray James, the Director of the Department of Revenue, to terminate the plaintiff's employment as Manager of the Department of Revenue's Bureau of Compliance; and

   Second: That the plaintiff's political affiliation was a substantial factor in defendant Russell's decision to urge that the plaintiff be terminated; and

   Third: That as a direct result of defendant Russell's urging, the Department of Revenue terminated the plaintiff because of plaintiff's political affiliation;

   unless you believe that the plaintiff is not entitled to recover by reason of Instructions No. 9 or 10.

part, if Hartley's "political affiliation was a substantial factor" in the decision to terminate his employment. Hartley asserts that the district court erred in refusing to add that the verdict should be for Hartley if his political affiliation was a "motivating factor" in the termination decision. Hartley contends that the "motivating factor" language was required by the Supreme Court's decision in *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). However, in *Mt. Healthy,* the Supreme Court stated that "the burden was properly placed upon respondent to show that his conduct was constitutionally protected, and that this conduct was a 'substantial factor'—or, to put it in other words, that it was a 'motivating factor' in the * * * decision not to rehire him." *Id.* at 287, 97 S.Ct. at 576 (footnote omitted). From this excerpt it is clear that in *Mt. Healthy* the Supreme Court determined that the terms "motivating" and "substantial" could be used interchangeably in the context of a claim for retaliatory discharge for the exercise of the employee's constitutional rights. Thus, in the instant case, the district court did not err in refusing to submit both these terms in the instructions to the jury.

### 2. Propriety of the Qualified Immunity Instructions.

Hartley contends that the district court erred in submitting to the jury a qualified immunity instruction as to Senator Russell. Instruction No. 9 stated "[y]our verdict must be for defendant Russell if you believe that a reasonable person would have believed that his actions did not violate the plaintiff's First Amendment rights." Hartley asserts that Russell was not entitled to this instruction because he failed to plead or timely raise this defense. We disagree.

■ From the outset of the action, Russell asserted absolute immunity from suit on the ground that he had acted in his capacity as a state legislator. Russell's assertions of absolute immunity clearly encompassed the lesser degree of qualified immunity as well. In his answer, Russell expressly denied all the allegations of Hartley's complaint and pleaded the affirmative defense of absolute immunity. In addition, at trial Russell offered much testimony in support of his contention that he properly acted within the scope of his legislative office. In light of this, we conclude that Russell's answer, and his active litigation of a good faith defense justified the district court's submission of the qualified immunity instruction.

Hartley further contends that neither James nor Russell were entitled to the specific qualified immunity instruction which the district court submitted to the jury.[5] In *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court held that qualified immunity shielded Government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738. Hartley submits that James and Russell knew of the illegality of a politically motivated dismissal of an employee in Hartley's position. In support of this contention, Hartley relies on the Supreme Court's decisions in *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), and *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), and the decision in *Gibbons v. Bond,* 523 F.Supp. 843 (W.D.Mo.1981), *aff'd,* 668 F.2d 967 (8th Cir.1982). These cases expound on the rule that the politically motivated discharge of an employee in a *non-policymaking* position violates the employee's constitutional rights. Thus Hartley argues that political motivation for the discharge, if proved, required denial of the qualified immunity defense because these defendants knew that Hartley held a non-policy-

**5.** Instruction No. 7 provides: "Your verdict must be for defendant James if you believe that a reasonable person would have believed that his actions did not violate the plaintiff's First Amendment rights."

Instruction No. 9 provides: "Your verdict must be for defendant Russell if you believe that a reasonable person would have believed that his actions did not violate the plaintiff's First Amendment rights."

making position for application of federal constitutional law principles.

■ The flaw in Hartley's argument is that when the termination decision was made, Hartley's position was not clearly defined as a non-policymaking position. Moreover, whether Hartley held a non-policymaking position was a matter of considerable controversy at trial: the defendants strenuously argued that Hartley held a policymaking position, while Hartley said not. As previously noted, the Missouri Personnel Advisory Board characterized Hartley's position as policymaking for state law purposes, while the district court determined that his position was non-policymaking for federal constitutional purposes. We further note that these contrary interpretations exist because a position which is non-policymaking for purposes of the civil rights law may well be a policymaking position for state law purposes.

In light of the controversy over this issue at trial, it cannot be said that the defendants in fact realized or should have realized that Hartley was a non-policymaker. Moreover, it is clear that Hartley's position as bureau manager was not the same as the non-policymaking branch office manager positions involved in the *Gibbons* decision.[6] Accordingly, we conclude that the district court properly determined that James and Russell were entitled to the qualified immunity defense instruction.

■ Finally, Hartley asserts that the district court erred in submitting the qualified immunity instruction as an affirmative defense to all claims and requests for relief. Hartley argues that he was entitled to an instruction which required the jury to decide, first, whether Hartley was entitled to nominal damages (and attorneys' fees) based on a violation of his first amendment rights, and second, whether he had sustained actual damages from the constitutional deprivation. Citing *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), Hartley asserts that the instructions

as given were too broad because qualified immunity does not shield a defendant sued in his official capacity. Because Hartley sued James and Russell only in their individual rather than their official capacities, the qualified immunity defense completely shielded James and Russell from any liability in their individual capacities. *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Accordingly, we conclude that the district court did not err in giving instructions on qualified immunity.

To the extent that Hartley was otherwise entitled to recover against the defendants for conduct in their official capacities, Hartley only presented that issue to the trial judge in his request for equitable relief. The district court determined that no constitutional violation occurred because Hartley's discharge had been based only on his poor job performance. Thus, the record contains no basis for concluding that Hartley was entitled to equitable relief and an award of nominal damages.

### 3. The Causation Instruction.

■ Hartley questions the propriety of the jury instruction on causation which stated "[y]our verdict must be for the defendants James and Russell if the plaintiff would have been terminated regardless of his political affiliation." Hartley asserts that the defendants should have been required to prove that Hartley's discharge was solely based on a departmental reorganization, as stated in the termination letter to Hartley. However, the cases which Hartley cites in support of this contention do not address constitutional violations. *See Whitmer v. Atchison, Topeka and Santa Fe Railroad,* 90 F.Supp. 253, 256 (W.D.Mo.1950) and *Seifner v. Weller,* 171 S.W.2d 617, 623 (Mo.1943).

Under the Supreme Court's decision in *Mt. Healthy, supra,* 429 U.S. at 287, 97 S.Ct. at 576, Hartley had the burden of proving that he was discharged for his political affiliation in violation of his constitutional rights. The defendants were then

---

6. In *Gibbons,* this court affirmed the district court's decision that branch office managers in the Missouri Department of Revenue were not policymaking positions. The dismissal of those

employees for their political affiliation therefore violated the constitutional rights of the dismissed employees. 668 F.2d at 968–69.

entitled to show that the same termination decision would have been reached in the absence of protected conduct. *Id.* As such, the defendants were free to demonstrate that the true reason for Hartley's discharge was his alleged poor performance. Accordingly, we find no error in this instruction.

### C. Russell's Claim of Legislative Immunity.

As we previously noted, Senator Russell separately appeals from the district court's pretrial judgment denying his motion for summary judgment on the basis of his legislative immunity. Senator Russell argues that we should reach the issue of his legislative immunity based on his separate appeal. In view of our decision affirming the district court's judgment on the merits, we find it unnecessary to decide the appeal from an intermediate ruling of the trial court. Accordingly, we order dismissal of Russell's appeal without costs. Our ruling on this issue does not address the merits of whether Russell should have received a summary judgment on grounds of legislative immunity.

Affirmed.

