Larry BROCKHOFF, Appellant,

v.

Charles LEARY and City of Lee's
Summit, Missouri, Respondents.

WD 36182.

Missouri Court of Appeals,
Western District.

Nov. 18, 1986.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 23, 1986.

Application to Transfer Denied
Feb. 17, 1987.

Irving Achtenberg, Kansas City, for appellant.

Reggie C. Giffin, Kansas City, for City of Lee's Summit, Mo.

George E. Leonard, Kansas City, for Leary.

Before LOWENSTEIN, P.J., and TURNAGE and GAITAN, JJ.

GAITAN, Judge.

This action was brought by appellant, Larry Brockhoff, a police officer, against his employer, the City of Lee's Summit, Missouri, and the former Chief of Police, Charles Leary, the respondents.

Brockhoff appeals the judgment rendered upon his first amended petition which was pled in two counts. Count I claims City and Leary violated § 105.510 RSMo. (1978) by not promoting Brockhoff. In Count II, Brockhoff seeks relief under 42 U.S.C. § 1983 for the acts pled in Count I. A jury verdict was rendered in favor of Brockhoff and against defendant City on Count I in the amount of $20,000, but for City on Count II. The verdict was for defendant Leary as to both Counts I and II.

The trial court denied all post-trial motions except defendant City's motion for new trial. This appeal followed. Brockhoff has alleged the following as trial court error:

1. The court's order of May 9, 1984, granting a new trial on all issues for inconsistency of the verdict, was a final judgment as to all issues and all parties and the court's jurisdiction expired thirty days thereafter. Therefore, Brockhoff claims that the court erred in vacating that order on May 18, 1984, and its order of July 18, 1984, granting City's Motion for New Trial was a nullity. This issue was taken separately by the Missouri Supreme Court on transfer and was ruled against plaintiff. *Brockhoff v. Leary and City of Lee's Summit*, 711 S.W.2d 869 (Mo. en banc 1986);

2. Granting a new trial on Count I only as to defendant City and not as to defendant Leary because the City's liability is predicated on the liability of its employee, the Chief of Police, and therefore the verdicts on Count I are inconsistent;

3. Denying Brockhoff a new trial on Count II as to both defendants because a verdict against either defendant on Count I, a violation of § 105.510 RSMo is inconsistent with a verdict in favor of that defendant on Count II, a violation of 42 U.S.C. § 1983;

4. By giving the verdict directors on Count II as to both defendants because the instructions too narrowly state the improper reasons claimed by Brockhoff as the basis for the decision not to promote him;

5. By giving the verdict director on Count II as to defendant City because it incorrectly states the law as to "Official Policy";

6. By giving the verdict director as to the City on Count II because the jury was thereby misled to believe that Leary was not liable because he was merely following a City Policy;

7. By giving affirmative defense instructions on Count II on behalf of both defendants.

The judgment of the trial court is affirmed in part and reversed in part.

Brockhoff has been a police officer in the Lee's Summit Police Department since 1975. Defendant Leary was the Chief of Police of Lee's Summit from August, 1976 until January, 1980.

During late 1978, the Lee's Summit City Council began to consider adopting a merit pay plan for City employees. This proposal sparked widespread interest and concern among City employees, including some

members of the police department, because officers felt the pay plan would eliminate their customary "cost of living" raises.

In response to the City's proposal to adopt a merit pay plan, some members of the police force began to hold meetings to discuss reactivating the Fraternal Order of Police (FOP) to express their displeasure. Those members included Robin Wycoff, Ronald Henderson, Gordon Cockrell and plaintiff. Some of the meetings were held at plaintiff's house. Leary testified that he was unaware of Brockhoff's role in these meetings concerning the pay plan, and was also unaware that Brockhoff was active in reorganizing the FOP. However, notices of the meetings were posted on a bulletin board in the Police Station.

There was an opening for the rank of sergeant in the department in May, 1979. The applicants for the position took written tests and were interviewed by an Oral Review Board. The City's Personnel Director then certified a list of the five applicants with the highest scores to Leary. Plaintiff was ranked first, followed by Officers Fred Weixeldorfer, Robin Wycoff, Bruce Trammell, and Robert Wyman. It appears from the evidence that prior to May 1979 with few exceptions the general practice was to promote the person who ranked first on the tests. Leary, however, promoted Trammell instead of plaintiff.

Leary testified that in making the promotion, he was looking for an applicant with good judgment, an even temperament, and the ability to be able to get along with the public and to be reasonable. In making the promotion, Leary reviewed the personnel file of each candidate, including that of plaintiff and conducted interviews with the applicants. Plaintiff had received numerous citations and awards for outstanding police work. Leary considered plaintiff's heroic acts as a policeman,[1] but also considered plaintiff's questionable judgment, failure to fulfill obligations, and bad temper. Plaintiff's personnel file carried in it a written reprimand for an unpleasant "run-in" between Brockhoff and an Army Corp of Engineers Park Ranger.[2] Plaintiff also had received an oral reprimand from Chief Leary less than two months before the 1979 promotion, for illegally disclosing the name of a juvenile suspect to the suspect's high school principal.[3] Leary testified that he did not consider Brockhoff's activities in helping to reactivate the FOP or in working against the merit pay plan when Leary decided not to promote plaintiff.

Leary asked his two assistants, Jones and Murphy, for their recommendations on the May 1979 promotion. Deputy Chief Jones recommended Trammell, and further stated that he would "not feel secure" in recommending Brockhoff. Murphy advised Leary that "no other candidate can excel in the Supervisory capacity as well as Trammell." Murphy's statements about Brockhoff were negative, or at best, neutral. Based upon his knowledge of the candidates, the information in Brockhoff's file, the information in the files of the other candidates, and upon his assistants' recommendations, Leary passed over the candidates with the three highest scores and promoted the fourth ranking candidate, Bruce Trammell.

After the promotion of Trammell was announced, Brockhoff circulated a petition, and filed a grievance. The gist of Brock-

1. In fact, in June, 1978 Chief Leary had submitted plaintiff's name for the Award of Outstanding Law Enforcement Officer of the Year, one of the honors which plaintiff had received for his heroism.

2. The park ranger had received numerous complaints that someone was discharging a weapon. This occurred within the city limits of Lee's Summit and was in violation of city ordinance. The ranger approached plaintiff on plaintiff's property, told him he thought it was dangerous, and asked him to cease. Plaintiff, who appeared intoxicated, used abusive and obscene language to the ranger and ordered him off his property, threatening to arrest him if he did not leave.

3. Plaintiff revealed the name of a juvenile he believed was involved in criminal activity to the school vice-principal and the vice-principal then confronted the juvenile. This led to a letter from the juvenile's parents to the police department.

hoff's grievance was that Leary had previously promoted the candidate with the highest test score, and Brockhoff felt that Lee's Summit City Ordinance § 2–324 was misapplied by Leary in making the promotion. The Ordinance provides in part:

(4) *Certification:* Applicants who successfully complete the examination may have their names placed on an eligible list for the appropriate classification by rank of grade with the highest grade going to the top of the list. An eligible list will only be established for those classifications having a large number of positions. *The personnel officer shall then certify to the appropriate department head for personal interviews the* top five (5) names if only one position is open, and an additional two (2) names for each additional open position in the same classification. *After the personal interview is conducted, the results of the interview will be reported to the personnel officer before more names will be certified.* The eligible list shall remain in effect for a period of twelve (12) months from the date of examinations, or until all eligibles have been interviewed and appointed or rejected.

(emphasis added).

Brockhoff did *not* mention in the grievance his involvement in reactivating the FOP as a possible reason for his being passed over. Leary heard the grievance and denied it. Plaintiff appealed the denial of his grievance to City Administrator, John Edwards. Edwards had the authority to set aside, or overrule Leary's decision, but did not. Brockhoff then had a meeting with the Mayor of Lee's Summit, but Brockhoff said he never received any response from the Mayor.

On September 11, 1979, Leary issued a Department Procedural Memorandum on promotion policy. The Memorandum provided in part:

3. *Certification*

Applicants who successfully complete the examinations may have their names placed on an eligible list for the appropriate classification by rank of grade with the highest grade going to the top of the list. The City Personnel Officer shall then certify to the appropriate department head for personal interviews the top five (5) names if only one position is open, and an additional two (2) names for each additional open position in the same classification. The department head shall conduct personal interviews with each applicant and shall conduct a staff review of the applicant's personal history. After the personal interview is conducted the department head shall make his selection for the position from those names certified to him. The results of the interview will be reported to the City Personnel Officer and more names will be certified if necessary. Those applicants not selected for the position shall remain on an eligible list. The eligible list shall remain in effect for a period of twelve (12) months from the date of the examinations, or until all eligibles have been interviewed and appointed or rejected.

In December 1979, there was another opening for sergeant. The remaining four candidates from the earlier panel, together with the candidate having received the sixth highest score in the competitive testing, were certified to Leary. Leary directed each of the eight sergeants in the department to evaluate all of the candidates. The evaluations from the sergeants which Leary received contained comments about Brockhoff such as the following: "Likes to short-cut too much"; "Unreliable, poor attitude, shirks responsibility, will not accept assignments willingly", "Poor attendance; old line cop; I don't believe he sets a good example"; "Uses coarse language, lack of diplomacy in dealing with citizens"; "Devotion to department leaves a lot to be desired". Leary said he took these comments into consideration in passing over Brockhoff again. Leary testified that he did not consider either plaintiff's FOP activities or plaintiff's protests about the merit pay plan in making his decision to not promote plaintiff. Plaintiff admitted that Chief Leary followed the procedure as set out in the September 11, 1979 memorandum in mak-

ing the December, 1979 promotion. Brockhoff claims, however, that the procedure set out in the September 11, 1979 memorandum differs from the procedure set out in the Ordinance, in that the Ordinance does not provide for personal interviews with the Chief.

In February, 1980, Leary resigned as Police Chief to accept another position. In May, 1980, Leary's successor, Dave Mitchell, had the opportunity to make his first promotion to sergeant. Mitchell requested and received a certified panel of candidates from the City Personnel Director. The four candidates certified were Brockhoff, Weixeldorfer, Wycoff and Downs. Mitchell promoted Robin Wycoff. Brockhoff admitted that Mitchell also followed the policy set out in the September 11, 1979 memorandum in making the May, 1980 promotion.

## I.

■ The trial court granted the City a new trial as to Count I. The reasoning of the court was that to the extent the verdict against the City was based upon Leary's conduct, it is inconsistent with the verdict in favor of Leary. Furthermore, the court reasoned that to the extent the verdict against the City was based upon Mitchell's conduct, it was not supported by the evidence. The trial court denied plaintiff's motion for a new trial against Leary. Plaintiff now claims that the trial court should have granted him a new trial on Count I against both the City and Leary due to inconsistency of the verdicts.

We agree that if the jury based their verdict against the City upon Leary's conduct, the jury's verdicts are inconsistent. We also agree with the trial court's ruling that there was not sufficient evidence to support a verdict against the City based upon Mitchell's conduct. Plaintiff admitted that Mitchell himself was active in the FOP at one time. Plaintiff also admitted that Mitchell never said anything negative about the FOP. In fact, the only evidence plaintiff presented regarding Mitchell's conduct was that Mitchell promoted Robin

Wycoff instead of plaintiff. Wycoff, however, also was very active in reactivating the FOP and had served as President of the organization.

In *Moran v. North County Neuro-Surgery, Inc,* 714 S.W.2d 231, 232–33 (Mo.App. 1986), the court stated:

> It is established in this state that where the right to recover is dependent entirely on the doctrine of respondeat superior and there is a finding of no negligence by the servant there should be no judgment against the master. When verdicts are returned which inconsistently exonerate the servant and hold the master the proper remedy is to grant the employer a judgment notwithstanding the verdict. This doctrine is not applicable if the liability of the employer may be predicated upon some basis other than the negligence of the exonerated servant ... The doctrine is also inapplicable where there is preserved instructional or other error in the verdict for the employee. (citations omitted).

The verdict directing instruction for Count I required the jury to find against the City if they believed that Leary or Mitchell refused to promote plaintiff because of his activity in forming or joining the FOP. Since we agree with the trial court that the verdict against the City could not properly be based upon Mitchell's conduct, it necessarily must be based upon Leary's conduct. Because the jury exonerated Leary, the trial court should have granted the City a judgment n.o.v. instead of a new trial according to *Moran.*

Plaintiff claims that the rule stated in *Moran* does not apply since there was instructional error because neither the verdict form nor any other instruction advises the jury that to find against the City it must also find against Leary. We disagree. As explained above, the jury could find the City liable under the verdict directing instruction if they believed that *either* Leary or Mitchell refused to promote plaintiff because of his FOP activity. According to the instructions the jury could find in favor of Leary but against the City due to

Mitchell's conduct. Therefore, instructional error did not cause the inconsistency. According to the evidence, however, the jury could only find against the City if they found against Leary, because there was not sufficient evidence for liability based upon Mitchell's conduct. Since the jury exonerated Leary, we reverse the trial court's grant of a new trial and order that judgment n.o.v. be entered in favor of the City.

## II.

Now we turn to plaintiff's allegations that he is entitled to a new trial as to both defendants on Count II. Plaintiff's reasoning is that if either defendant violated § 105.510 RSMo., then that defendant "inevitably" also violated § 1983. Therefore, plaintiff argues that if a new trial is granted as to Count I, a new trial must also be granted as to Count II. We disagree for two reasons. First, we reversed the trial court's grant of a new trial on Count I and therefore plaintiff's argument is moot. Secondly, even if a new trial were granted as to Count I, the elements needed to prove a violation of § 105.510 RSMo are not the same as those needed to prove a violation of 42 U.S.C. § 1983. In the latter, plaintiff must prove that an official policy of the City caused a denial of plaintiff's rights. *Pembaur v. City of Cincinnati*, 475 U.S. ——, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); *Monell v. New York City Department of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611, 638 (1978).

In addition, plaintiff faced a higher burden under Count II. Under § 1983 he must establish that the FOP activity was "a substantial factor" in the decision not to promote plaintiff. *Mount Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). The U.S. Supreme Court has defined "substantial factor" in a § 1983 case to mean "decisive factor", *Board of Education v. Pico*, 457 U.S. 853, 870 n. 22, 102 S.Ct. 2799, 2809 n. 22, 73 L.Ed.2d 435, 449 n. 22 (1982). Conversely, § 105.510 RSMo states that an employee cannot be treated differently "because of" union activity. The Missouri Supreme Court has defined "because of" as meaning "by reason of" or "on account of", *Stratton v. Kansas City*, 362 S.W.2d 558, 561 (Mo.1962).

It is clear that the elements as well as the burden of proof under Count I and II are different.

## III.

Next, we turn to plaintiff's assertion that the verdict directors as to Count II were erroneously limited to FOP activity. Although plaintiff claims instructional error, he has not preserved this error as required by Mo.R.Civ.P. 84.04(e) since he did not fully set forth the instructions in his brief. However, we will consider this issue *ex gratia*.

Instruction No. 13 reads as follows:

### INSTRUCTION NO. 13

Your verdict must be for plaintiff and against defendant City of Lee's Summit on the federal civil rights claim regarding the May 1979, December 1979 or May 1980 promotions if you believe:

First, plaintiff's activity in reactivating or membership in the Fraternal Order of Police was a substantial factor in Director Leary or Chief Mitchell's decision not to promote plaintiff, and

Second, in so refusing to promote plaintiff, Director Leary or Chief Mitchell was acting in conformance with a policy, custom or practice of defendant City of Lee's Summit to retaliate for the reactivation of or membership in Fraternal Order of Police, and

Third, plaintiff was thereby damaged.

Unless you believe plaintiff is not entitled to recover by reason of Instruction No. 15.

Instructions Nos. 8, 9, and 14 contained similar language. The verdict directing instruction tendered by plaintiff and refused by the court read in pertinent part:

Your verdict must be for plaintiff and against defendant City of Lee's Summit if you believe:

First, defendant Leary failed to promote plaintiff to the position of Sergeant because of plaintiff's exercise of his rights under the First Amendment to the United States Constitution, ...

Plaintiff submitted a similar instruction against Leary. Plaintiff also tendered an instruction defining "rights under the First Amendment" as "the right to freedom of speech, the right to freedom of association, and the right to petition the government for redress of grievances."

Plaintiff claims there was evidence of improper conduct by defendants in response to plaintiff's petition for grievances as to the personnel policies and promotions, the filing of a lawsuit, and the exercise of free speech as to the proposed changes in the city pay plan, in addition to his FOP activity. Plaintiff's argument must fail because there was no evidence presented to support plaintiff's claim on these grounds.

Instructions must be in accord with the pleadings and evidence. *Hartford Accident & Indemnity Co. v. List,* 424 S.W.2d 761 (Mo.App.1968); *Kells v. Pevely Dairy Co.,* 393 S.W.2d 61 (Mo.App.1965).

Plaintiff testified that he filed a grievance with Leary concerning the promotion process. Plaintiff said Leary would not allow him to have two witnesses present with him at the grievance meeting. Plaintiff also claims that Leary told him at the grievance meeting that he didn't like plaintiff "rocking the boat." Plaintiff was allowed, however, to pursue his grievance with the City Administration and with the Mayor. Plaintiff cannot complain merely because they supported Leary's decision not to promote plaintiff. Plaintiff could have filed a grievance with the City Administrator that Leary did not allow him to have two witnesses present at his grievance meeting, but plaintiff did not do so.

Plaintiff's claim that there was evidence of improper conduct by defendants as to the filing of a lawsuit also fails. Plaintiff must show that *his* constitutional rights were denied because of an official policy, custom or practice of the City. Although Robin Wycoff testified that Leary retaliated against *Wycoff* when *Wycoff* sought legal advice, this does not show that *plaintiff's* rights were violated. Plaintiff did not show that he was not allowed to file a lawsuit.

Likewise, plaintiff's argument that he was not allowed to exercise free speech as to the proposed changes in the city pay plan was not supported by any evidence. Plaintiff testified that the City Council held an open forum meeting to discuss the proposed changes. All city employees could attend and express their views. To the extent that plaintiff claims that he was not promoted because of his exercise of free speech through the FOP, Instruction No. 13 adequately placed this before the jury.

In addition to the fact that there was not sufficient evidence to support plaintiff's tendered instructions, instructions should submit only ultimate facts. *Price v. Seidler,* 408 S.W.2d 815, 824 (Mo. 1966). Plaintiff's proposed instructions contained abstract statements of the law and would have given the jury a roving commission. Plaintiff's point is without merit.

### IV.

Plaintiff claims that Instruction No. 13, set out fully in Section III above, and its converse, Instruction No. 14, misstate the law as to "official policy". Plaintiff argues that he did not have to prove that Leary or Mitchell were "acting in conformance with a policy, custom, or practice of defendant City of Lee's Summit" because the acts of the chief of police "may fairly be said to represent official policy."

It is true that *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), held that § 1983 liability may be imposed upon a municipality "when execution of [its] policy or custom ... by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury

..." *Monell* 436 U.S. at 694, 98 S.Ct. at 2037. Plaintiff claims that the wrongful acts of the chiefs of police were official conduct. We do not feel there was sufficient evidence to apply this principle in this case.

In *Pembaur v. City of Cincinnati,* 475 U.S. ——, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), the court explained when the act of an official is sufficient to impose liability on the municipality:

> Municipal liability attaches only where the decision maker possesses final authority to establish municipal policy with respect to the action ordered. The fact that a particular official—even a policy making official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. (Citation omitted). *The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable.* (Emphasis added)

*Pembaur,* 475 U.S. at ——, 106 S.Ct. at 299, 89 L.Ed.2d at 464.

Section 2–324 of the City of Lee's Summit ordinance sets out the official policy of the City which was to be followed by "persons authorized as appointing authorities by the city administrator." Leary and Mitchell had discretion within the guidelines of § 2–324 in making promotion decisions, but they did not have responsibility "for establishing final government policy" respecting promotion activity for the City. Their exercise of discretion in not promoting plaintiff can not be said to represent the official policy of the City.

Therefore, the trial court did not err in submitting Instructions Nos. 13 and 14.

### V.

Plaintiff claims that the alleged error he raised as to Instruction No. 13 against the City, discussed in Section IV, also caused error as to Leary. Plaintiff's argument is that because Instruction No. 13 allegedly incorrectly stated the law as to "official policy", the jury was misled to believe Leary was not liable because he was merely following a City policy. Plaintiff claims that this is why the verdicts on Count I were inconsistent.

We have already discussed in Section III that Instruction No. 13 was not erroneous under the evidence. We also discussed the inconsistency of the verdicts in Section I. In any event, we fail to see how Instruction No. 13 misled the jury as to plaintiff's claims against Leary in either Count I or Count II. The court gave a separate verdict directing instruction as to Leary for both Counts I and II. Those instructions did not mention official policy, but allowed the jury to find against Leary if he refused to promote plaintiff "because of" plaintiff's FOP activity (Count I) or if plaintiff's FOP activity was a "substantial factor" in Leary's decision (Count II). The jury found Leary not liable. We have no reason to speculate that the jury did not follow the separate verdict directing instructions as to each defendant for each count in reaching their verdicts. This point is without merit.

### VI.

■ Plaintiff claims that the trial court erred in giving Instructions Nos. 10 and 15. These instructions directed the jury to find for the defendants if they believed that Leary and Mitchell would have promoted Trammell, Wyman, and Wycoff even if plaintiff had not been active in the FOP. Plaintiff argues that these instructions set out an affirmative defense which neither defendant pled, and that the instructions misconstrue the law under *Mount Healthy City Distr. Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

In *Mount Healthy* the court explained the burden of proof in a § 1983 action as follows:

> Initially, in this case, the burden was properly placed upon respondent to show that his conduct was constitutionally protected, and that this conduct was a "substantial factor"—or, to put it in other words, that it was a "motivating factor"

in the Board's decision not to rehire him. Respondent having carried that burden, however, the District Court should have gone on to determine whether the Board had shown by a preponderance of the evidence that it would have reached the same decision as to respondent's reemployment even in the absence of the protected conduct.

*Mount Healthy*, 429 U.S. at 287, 97 S.Ct. at 576.

Instructions Nos. 10 and 15 properly allowed the jury to find for the defendants in accordance with *Mount Healthy*, if the jury believed that Leary and Mitchell would have made the same promotion decisions even if plaintiff had not been active in the FOP. Defendants presented evidence supporting these instructions.

■ We do not think that these instructions raised an affirmative defense. Even if they did, defendants introduced, without objection, evidence to support these instructions. Under Missouri law, this constituted an amendment of defendants' pleadings even if the pleadings are not formally amended. *Arnett v. Venters*, 673 S.W.2d 67, 72 (Mo.App.1984); *Norris v. Jones*, 661 S.W.2d 63, 65 (Mo.App.1983).

The judgment of the trial court granting the defendant, City of Lee's Summit a new trial is reversed and remanded with directions that a judgment n.o.v. be entered in favor of the City. In all other respects, the judgment of the trial court is affirmed.

All concur.

