J. Michael DOOLEY,
Plaintiff/Appellant,

v.

ST. LOUIS COUNTY, Missouri, Charlie A. Dooley, and James Baker,
Defendants/Respondents.

No. ED 92424.

Missouri Court of Appeals,
Eastern District,
Division Two.

Dec. 8, 2009.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 25, 2010.

David E. Sowers, Ferne P. Wolf, M. Beth Fetterman, St. Louis, MO, for Plaintiff/Appellant.

Patricia Redington, Cynthia L. Hoemann, Clayton, MO, for Defendants/Respondents.

## SHERRI B. SULLIVAN, P.J.

### Introduction

J. Michael Dooley (Plaintiff) appeals from the trial court's judgment, entered upon a jury verdict, in favor of Defendants St. Louis County, Missouri (County), Charlie Dooley (Dooley) and James Baker (Baker) on Plaintiff's 42 USC § 1983 claim against his former employer, County, and individual government actors Dooley and Baker, for violations of Plaintiff's First Amendment rights. We affirm.

### Factual and Procedural Background

This is the second time Plaintiff's case has been considered by this Court. Plaintiff previously appealed from the trial court's judgment granting Defendants' motion to dismiss Plaintiff's petition, and, finding the Plaintiff's petition adequately stated a cause of action, we reversed the trial court's judgment and remanded the case for further proceedings in *Dooley v. St. Louis County*, 187 S.W.3d 882 (Mo. App. E.D.2006) (hereinafter referred to as "*Dooley I*").

Plaintiff was the former director of the St. Louis County Department of Highways and Traffic. Dooley is the county executive for County. Baker was Dooley's chief of staff during the time period relevant to Plaintiff's claims.

Plaintiff filed his petition in May 2005, alleging that Defendants had violated his rights under the First and Fourteenth Amendments to the U.S. Constitution by terminating his employment in retaliation for Plaintiff's opposition to certain proposed road projects supported by Dooley. The case proceeded to trial in November 2008.

During voir dire, Plaintiff's counsel informed the jury panel that the case was going to involve an e-mail containing sexual content. Plaintiff's counsel indicated that he did not believe that the jurors would have to view the video attached to the e-mail, but that they would hear what was in the video. Plaintiff's counsel then told the panel that the e-mail was titled "two tickets for the price of one," and that the video showed a naked woman with a baseball bat in her rectum, performing oral sex on a naked man. After so informing the panel, Plaintiff's counsel asked if there was "anybody in here who is made so uncomfortable by that, that they don't think they could fairly evaluate the circumstances leading up to it, and the way that it was handled?" Several potential jurors spoke up, including Juror 12 (Tracy). The following discussion then occurred:

[Tracy]: Yes, if it goes on and on, I would. Just hearing it once is enough, but I don't think I would want to listen to it for a long period of time.

[Plaintiff's counsel]: And you wouldn't want to sit here and watch it for 50 seconds?

[Tracy]: No. How many seconds?

[Plaintiff's counsel]: Fifty.

[Tracy]: No. I don't think I would.

Later, Plaintiff's counsel asked the panel to disclose if any juror was aware of any reason that would interfere with his or her ability to reach a fair and impartial verdict in the case. The following exchange then

occurred between Plaintiff's counsel and Tracy:

[Tracy]: I understand the concept of pornography, but I wouldn't want to have to watch it and talk about it for a long period of time.

[Plaintiff's counsel]: You think that might make it impossible—

[Tracy]: It bothers me.

[Plaintiff's counsel]: Well, I can tell you, I don't think anybody thinks other than, you know, it's bad stuff, but then the question is, what are the surrounding circumstances.

[Tracy]: Why do we have to really watch it?

[Plaintiff's counsel]: Huh?

[Tracy]: Why do we have to really watch it?

[Plaintiff's counsel]: I'm not going to ask you to, but during the course of the trial, you may have to. I can't guarantee you that you won't. Okay? So if you had to see it, you couldn't be fair? Is that what you're saying?

[Tracy]: I really don't know.

Subsequently, Defendants' counsel followed up on this line of questioning with Tracy:

[Defendants' counsel]: Ms. Tracy, you said you would be bothered, and you talked a lot about being bothered if for some reason you had to look at the video clip. If you were satisfied that [Plaintiff] acted appropriately after he got the e-mail, would you be able to put aside your feelings about not liking the content of the video, or having to see the video? And would you decide this case fairly based on the evidence, and not hold him responsible if you decided he acted appropriately? You would be able to be fair?

[Tracy]: Yes.

Plaintiff's counsel challenged Tracy for cause, opining that she had expressed considerable difficulty with being fair and impartial given the content of the video. Defendants' counsel countered that Tracy had stated she could be fair, and the court denied Plaintiff's motion to strike Tracy.

Tracy was seated as a juror and the cause proceeded to trial. During the second day of trial, Defendants' counsel commenced her cross-examination of Plaintiff. The following exchange occurred when the subject of the e-mail was being discussed:

[Defendants' counsel]: I'm going to ask you for the third time, [Plaintiff], to tell the jury whether the clip was pornographic.

[Plaintiff]: I think pornographic is in the mind of the reader, and to me, that was not pornographic, it was entirely inappropriate and had sexual content to it.

[Defendants' counsel]: The video clip that was attached was not pornographic in your mind; is that correct?

[Plaintiff]: Yes, because it was inappropriate.

[Defendants' counsel]: Okay. This inappropriate e-mail clip that was not pornography, showed a woman with a baseball bat in her rectum, didn't it?

[Plaintiff]: Yes, it did.

[Defendants' counsel]: Okay. And the buttocks and torso—

[Tracy]: Can I leave while you're talking about this, because I said I'm not going to listen to this. I'm not going to. The degree of pornography is not on trial, it's pornography or not pornography.

[Court]: Ms. Tracy, let me do this. Let me talk to the attorneys at sidebar. Okay? Can you come on up, please.

During proceedings held at sidebar, the court indicated that Tracy would be excused from service. Plaintiff's counsel re-

quested a mistrial on the basis that Tracy's spontaneous outburst would unduly influence the jury. The court denied Plaintiff's request.

Tracy was excused. After one alternate juror was excused due to vacation plans, another alternate juror was seated in Tracy's place. When proceedings returned to open court, the trial court told the jury that they did not need to worry about what happened to the other jurors. The court further stated, "There is nothing that anybody did wrong or anything like that. It's just, you know, I can explain it to you after the verdict, but I'm not going to bother with that right now."

Plaintiff tendered verdict directors requiring Plaintiff to prove his speech was a "motivating factor" in Defendants' termination action. Plaintiff also offered an instruction defining "motivating factor": "The phrase 'motivating factor' as used in these instructions means plaintiff's statement or statements played a part in defendant's decision to discharge plaintiff. However, plaintiff's statement or statements need not have been the only reason for the defendant's decision to discharge him." Defendants tendered verdict directors requiring Plaintiff to prove his speech was a "substantial or motivating factor" for Defendants' action. The trial court used its own verdict directors, adopting Plaintiff's format, but employing the "substantial or motivating factor" language. The court rejected Plaintiff's instruction defining "motivating factor." During the instruction conference, Plaintiff objected to the addition of the phrase "substantial or" to the verdict director "for the reason that it becomes a d[i]sjunctive submission. It's confusing. It gives the jury a roving commission." Plaintiff also objected to the court's rejection of his definitional instruction for "motivating factor," stating that "we believe that in accor-dance with this particular case, that that definition is mandatory to explain motivating factor because it requires definition."

The jury returned a verdict in favor of Defendants, by a 9–3 vote, and the trial court entered judgment accordingly on November 7, 2008. Plaintiff filed his Motion for New Trial on December 3, 2008, raising as grounds the court's failure to strike Tracy for cause; failure to grant a mistrial; and refusal of Plaintiff's instruction defining the phrase "motivating factor, and tendered Jury Instructions E, F and G, giving instead Instructions 6, 7, and 8, without the definitional instruction." The court denied Plaintiff's motion on January 5, 2009.

This appeal follows.

### Points on Appeal

In his first point on appeal, Plaintiff claims the trial court erred in refusing to grant a new trial after instructing the jury to find for Plaintiff if Plaintiff's speech was a "substantial or motivating factor" in the actions Defendants took against him and rejecting Plaintiff's tendered verdict directors, which called for Plaintiff to prove his speech was "a motivating factor," because the verdict directors given to the jury constituted a prejudicial roving commission in that the verdict directors allowed the jury to require Plaintiff to prove his speech was a "substantial factor," when, if Plaintiff proved his speech was a "motivating factor," Plaintiff was entitled to verdicts in his favor.

In his second point, Plaintiff claims the trial court erred in denying Plaintiff's challenge of Juror Tracy for cause because Tracy was not eligible to be a juror in that Tracy stated she was unwilling to listen to all the evidence in the case, meaning her opinions precluded her from following the law as declared by the court in its instruc-

tions, which included the requirement that Tracy listen to all the evidence.

In his third point, Plaintiff claims the trial court erred in refusing Plaintiff's motion for new trial and request for a mistrial after Juror Tracy, in the presence of all the jurors, commented on the evidence and articulated her refusal to listen to all the evidence because Tracy's outburst prejudiced Plaintiff in that it involved all of the jurors in a pre-deliberation discussion of the evidence. She asserts the jurors also heard Tracy refuse to abide by the court's instruction, conduct which was ratified by the court.

## Standard of Review

We review a trial court's denial of a motion for new trial for abuse of discretion. *Campise v. Borcherding*, 224 S.W.3d 91, 94 (Mo.App. E.D.2007). We find that a trial court has abused its discretion when its ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate lack of careful consideration. *Id.* Viewing the evidence in the light most favorable to the verdict, we consider whether substantial evidence supports the jury's verdict and will disturb the jury's decision only if there is a complete lack of probative evidence. *Id.*

A trial court's determination whether to grant a mistrial rests within its discretion and will not be reversed absent an abuse of that discretion. *Id.* Mistrials are drastic remedies, granted only in exceptional circumstances. *Id.*

## Discussion

### Point I

In his first point, Plaintiff claims the trial court erred in refusing to grant his request for new trial because the verdict director given to the jury required it to find for Plaintiff if his speech was a "substantial or motivating factor" in the County's discharge of Plaintiff, and it constituted a prejudicial roving commission by allowing the jury to require Plaintiff to prove his speech was a "substantial factor" when Plaintiff was entitled to verdicts in his favor if he proved his speech was a "motivating factor."

As an initial matter, we note that, although Plaintiff objected during the instruction conference to addition of the phrase "substantial or" to the verdict director on the basis that it constituted a disjunctive submission, Plaintiff only complained of error in the court's refusal to supply a definitional instruction for the phrase "motivating factor" in his Motion for New Trial. It is arguable that Plaintiff has not adequately preserved for appellate review his claim of error as to the addition of the phrase "substantial or," but given his more specific objection on this ground during the instruction conference, we give Plaintiff's more general statement of error in his motion the benefit of the doubt. *See* Rule 78.07(a); *Care v. Coffman*, 92 S.W.3d 245, 251 (Mo.App. E.D.2002).

We review de novo whether a jury was properly instructed. *Harvey v. Washington*, 95 S.W.3d 93, 97 (Mo. banc 2003). We reverse a jury's verdict only if the offending instruction misdirected, misled, or confused the jury, resulting in prejudicial error. *Id.*

Where there is no applicable MAI instruction, a non–MAI instruction may be given, provided that it is simple, brief, impartial, and free from argument. *McBryde v. Ritenour Sch. Dist.*, 207 S.W.3d 162, 169 (Mo.App. E.D.2006).

The verdict director given to the jury for Plaintiff's claim against County read as follows:

Your verdict must be for plaintiff J. Michael Dooley and against defendant St. Louis County, Missouri, if you believe:

First, plaintiff J. Michael Dooley made any or all of the following statements:

(a) that a proposed connection of Hanley and Folk Roads was unsafe; or,

(b) that public funds should not be used to pay Matthew Foggy for loss of access to property on Keinlen Avenue that was not incurred; or,

(c) that public funds should not be used to the proposed Geiger Road extension project was not an appropriate use of taxpayers' money [sic]; or,

(d) that public funds should not be used to build a fence for a landowner who had been paid for a land-taking near Keller Road/Suson Hills Drive; or

(e) that proposed additional payment of public funds to the owner of Combs Tire was inappropriate; and

Second, that one or more of these statements was a substantial or motivating factor in defendant St. Louis County's discharge of plaintiff; and

Third, as a direct result of such conduct, plaintiff J. Michael Dooley sustained damage.[1]

The verdict director tendered by Plaintiff differed from the one given to the jury only in that the second paragraph read: "Second, that one or more of these statements was a motivating factor in defendant St. Louis County's discharge of plaintiff; and[.]"

We next address that part of Plaintiff's point that asserts that the verdict directors given to the jury constituted a prejudicial roving commission because the instructions allowed the jury to require Plaintiff to prove his speech was a "substantial factor" in Defendants' decision to terminate him, when Plaintiff was entitled to verdicts in his favor if he proved his speech was a "motivating factor" in the decision. We believe Plaintiff misstates the required showing.

In a Section 1983 action such as Plaintiff's, Missouri courts require a showing that his speech activity was a "substantial factor" in the County's decision to terminate him. *Brockhoff v. Leary*, 723 S.W.2d 431, 436 (Mo.App. W.D.1986). For purposes of Section 1983, "substantial factor" means "decisive factor." *Id.* In *Brockhoff* the Western District quoted from *Mount Healthy City Board of Education v. Doyle*, 429 U.S. at 287, 97 S.Ct. 568, to explain the Section 1983 plaintiff's burden of proof: "Initially, in this case, the burden was properly placed upon respondent to show that his conduct was constitutionally protected and that this conduct was a 'substantial factor'—or to put it in other words, that it was a 'motivating factor' in the Board's decision not to rehire him." *Brockhoff*, 723 S.W.2d at 438–39. Once Plaintiff has met his burden, the fact finder must determine whether County has shown by a preponderance of the evidence that it would have terminated him even in the absence of the protected conduct. *See id.* at 439; *see also Board of County Comm'rs, Wabaunsee County, Ks. v. Umbehr*, 518 U.S. 668, 675, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996) (to prevail on First Amendment claim, government employee must prove that speech

---

1. The verdict directors given to the jury for Plaintiff's claim against Dooley and Baker contained the identical "substantial or motivating factor" language as the County's verdict director with only slight variations as to their actionable conduct. For purposes of our discussion and to avoid unnecessary repetition, we need not set out the text of those verdict directors.

was constitutionally protected, and that it was a substantial or motivating factor in termination; if employee meets this burden, government may escape liability by showing it would have terminated employee even in the absence of the protected speech).

Plaintiff argues that, in *Dooley I*, we held Plaintiff could state a claim with allegations that his speech was a substantial or motivating factor in Defendants' decision-making, and thus Plaintiff was entitled to a verdict if his speech was a substantial factor in his discharge, or if his speech was a motivating factor in his discharge. We disagree.

In *Dooley I*, we concluded "only that Plaintiff sufficiently pleaded his claim alleging Defendants terminated Plaintiff's employment in retaliation for Plaintiff's opposition to certain road projects supported by Executive." 187 S.W.3d at 886. In determining that Plaintiff's pleading was sufficient, we noted he alleged the following elements: "Plaintiff engaged in speech that, on the face of the petition, appears to have addressed matters of public concern, which is protected under the First Amendment; and Plaintiff's speech was a substantial or motivating factor in Defendants' decision to terminate Plaintiff's employment." *Id.*

In his brief, Plaintiff contends that the terms "substantial" and "motivating" have different meanings; or, if the terms are synonymous, the instruction given was erroneous because by connecting the words with the disjunctive "or," the court indicated that the words had different meanings, but defined neither. During the instruction conference, however, Plaintiff objected only that the addition of the phrase "substantial or" constituted a disjunctive submission. As well, during oral argument before this Court, Plaintiff indicated his position was that the terms "motivating"

and "substantial" were not synonymous, and that the disjunctive submission gave the jury a "roving commission."

We reject Plaintiff's contentions that connecting the terms with the word "or" indicated that the words had different meanings and constituted a disjunctive submission.

We find *Hartley v. Fine*, 780 F.2d 1383, 1387 (8th Cir.1985), instructive on this issue. In *Hartley*, the plaintiff presented the argument that the district court erred in refusing to add the words "motivating factor" to an instruction that directed the jury to return a verdict for the plaintiff if his "political affiliation was a substantial factor" in the decision to terminate his employment because *Mount Healthy* required their inclusion. *Id.* at 1386–87. The Eighth Circuit disagreed, explaining that *Mount Healthy* determined that the terms "motivating" and "substantial" could be used interchangeably in the context of a retaliatory discharge claim. *Hartley*, 780 F.2d at 1387. The plain meaning of "interchangeable" is "capable of being interchanged; especially: permitting mutual substitution." Merriam–Webster Online Dictionary 2009. Given this plain meaning, the explanation in *Hartley*, and the Supreme Court's use in *Mount Healthy* of the phrase "motivating factor" to elaborate on the meaning of "substantial factor," we reject Plaintiff's contention that the two phrases are different and that the jurors were instructed to find for Plaintiff based on two alternative degrees of intent. *See Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. 568. As the two concepts are treated as synonymous, we do not share Plaintiff's view that these standards are in conflict, nor can we say that the verdict director misstated the substantive law. *Id.*

Moreover, we note that many federal courts employ the phrase "substantial or motivating factor" in First Amendment

verdict directors,[2] and, in fact, Section 168.20 of *Federal Jury Practice and Instructions, Civil, 5th ed.* (2009), proffers an instruction with the following language: "That plaintiff's speech activity was a substantial or motivating factor in defendant's decision to [discharge plaintiff ___ from employment] [not promote plaintiff][.]" *See also* "Notes," *Id.*

We likewise reject Plaintiff's argument that, if the two phrases are synonymous, the instruction given was erroneous because the disjunctive "or" indicated that the words had different meanings, and no instruction was given to define either.

Interestingly, the Committee Comments for the Eighth Circuit in the "Notes on Use" section of *Federal Jury Practice and Instructions, Civil, 5th ed.* indicates that the term "motivating factor may be of such common usage that it need not be defined." Section 168.20: Speech Activity Concerning Subject of Public Concern, *Federal Jury Practice and Instructions, Civil, 5th ed.* (2009). Likewise, although the "Committee Comments for 8th Cir. Civil Jury Instr." Section 5.71 (2008) (defining "motivating factor") recommends giving the definitional instruction, it acknowledges that "[a] court may decide that the term 'motivating factor' need not be defined expressly because its common definition is also the applicable legal definition."

▮▮▮ Additionally, we note that Plaintiff's argument actually cuts against any claim of prejudice. If Plaintiff's tendered verdict director had been given, the jury would have been instructed that

Plaintiff's burden was to show his conduct was constitutionally protected and that this conduct was a "motivating factor" in the County's decision to fire him. Plaintiff contends that showing his conduct was a "substantial factor" in the County's decision imposes a higher burden on him. Yet, the law in Missouri clearly states that a plaintiff bringing a Section 1983 retaliation claim must establish that his conduct was a "substantial factor" in the employment decision. *Brockhoff,* 723 S.W.2d at 436. "A verdict director must require the jury to find all ultimate issues or elements necessary to the plaintiff's case, except those unmistakably conceded by both parties." *Harvey,* 95 S.W.3d at 97. Consequently, as Plaintiff's burden was to establish that retaliation was a substantial factor; if a motivating factor is a lower threshold, then an instruction allowing the jury to find for Plaintiff by such a showing could not possibly be prejudicial to Plaintiff. *Id.*

The language of the given instruction properly recited Plaintiff's burden of proof. *See Harvey,* 95 S.W.3d at 97; *Wilkie v. Robbins,* 551 U.S. 537, 556, 127 S.Ct. 2588, 168 L.Ed.2d 389 (2007) (discussing retaliation cases and noting that employees fired after speaking out on matters of public concern need to prove that conduct at issue was constitutionally protected and that conduct was a substantial or motivating factor in termination); *Brockhoff,* 723 S.W.2d at 438–39. Moreover, the word "motivating" is commonly used and readily understandable. *In the Matter of Van Orden,* 271 S.W.3d 579, 586 (Mo. banc 2008) (although legal or technical words

---

**2.** The Fifth Circuit has approved a *Mt. Healthy*-type instruction using "substantial or motivating factor," *see Brown v. Bullard Indep. Sch. Dist.,* 640 F.2d 651 (5th Cir.), cert. denied, 454 U.S. 828, 102 S.Ct. 120, 70 L.Ed.2d 103 (1981); as have the Ninth Circuit *see Ostad v. Oregon Health Scis. Univ.,* 327 F.3d 876, 883–84 (9th Cir.2003); the First Circuit, *see Sanchez–Lopez v. Fuentes–Pujols,* 375 F.3d 121 (1st Cir.2004); the Seventh Circuit, *see Deloughery v. City of Chicago,* 422 F.3d 611 (2005); and the Eleventh Circuit, *see Eleventh Circuit Pattern Jury Instructions (Civil Cases)* (2005), among others.

should be defined, meaning of ordinary words used in their usual or conventional sense need not be).

Based on the foregoing, we conclude the verdict director did not misdirect, mislead, or confuse the jury; moreover, we find no prejudice to Plaintiff. *See Harvey*, 95 S.W.3d at 97.

Point denied.

### Point II

In his second point, Plaintiff claims the trial court erred in denying his challenge of Tracy for cause because she stated she was unwilling to listen to all the evidence in the case, thus precluding her from following this requirement as declared by the trial court in its instructions.

On appeal, we uphold a trial court's rulings on challenges for cause unless they are clearly against the evidence and are a clear abuse of discretion. *Joy v. Morrison*, 254 S.W.3d 885, 888 (Mo. banc 2008). The inquiry relevant to our determination is whether the venireperson's beliefs preclude following the court's instructions to the extent that they prevent or substantially impair his ability to perform his juror duties. *Id.* A venireperson's answer to a single question is not definitive; we consider the entire examination. *Id.* Because trial courts are best situated to evaluate a venireperson's qualifications to serve, we afford them broad discretion in their determinations. *Id.*

Section 494.470, RSMo 2004, establishes the grounds for challenges for cause. Subsection 2 of the statute provides that "[p]ersons whose opinions or beliefs preclude them from following the law as declared by the court in its instructions are ineligible to serve as jurors on that case."

Upon questioning by Plaintiff's counsel, Tracy indicated that she would not want to watch the video or talk about it for a long period of time. When Plaintiff's counsel asked her, "So if you had to see it, you couldn't be fair? Is that what you're saying?" Tracy responded that she really did not know. However, when Defendants' counsel subsequently asked Tracy if she would be able to put aside her feelings about the video content, and would decide the case fairly based on the evidence and would be fair, Tracy said, "Yes."

"Initial reservations expressed by venirepersons do not determine their qualifications; consideration of the entire voir dire examination of the venireperson is determinative." *Joy*, 254 S.W.3d at 891. An examination of the record reveals that there were numerous questions to which Tracy did not feel compelled to respond, including several concerning work e-mail policies and the receipt of inappropriate sexual content. Equivocation, in and of itself, is not enough to disqualify a juror and the bare possibility of prejudice does not deprive the trial court of discretion to seat the venireperson. *Id.* at 890–91. Although Tracy's answers to Plaintiff's initial question raised the possibility that she would be unwilling to listen to all of the evidence, Tracy subsequently expressed her ability to be fair and impartial. The trial court did not abuse its discretion in denying Plaintiff's challenge of Tracy. *Id.* at 888.

Point denied.

### Point III

In his third point, Plaintiff claims the trial court erred in refusing his motion for new trial and his request for mistrial after Tracy, in the presence of all the jurors, commented on the evidence and articulated her refusal to listen to all of the evidence.

During cross-examination of Plaintiff concerning the video clip by Defendants'

counsel, Tracy asked to leave during the line of questioning, said that she would not listen to further discussion of the video clip, and stated, "The degree of pornography is not on trial, it's pornography or not pornography." The court promptly called the attorneys forward for sidebar proceedings, where Plaintiff's counsel requested a mistrial. The court subsequently excused Tracy from service and an alternate juror was seated.

Mistrials are drastic remedies, granted only in exceptional circumstances. *Campise*, 224 S.W.3d at 94. We review the denial of a request for mistrial and trial court's decisions concerning juror misconduct for abuse of discretion. *Id.* at 94, 96. Plaintiff contends that he was prejudiced by Tracy's outburst because she commented on the evidence, exposed the jury to extrinsic information, and involved all the jurors in pre-deliberation discussion of the evidence. He further asserts that Tracy's conduct in refusing to abide by the court's instruction was ratified by the court.

Plaintiff contends this situation is most closely analogous to two types of cases: 1) those in which someone in the courtroom, such as a witness or bystander, makes an inappropriate outburst during trial; and 2) those in which jurors receive evidence outside the judicial process. We flatly reject that the present circumstances are analogous to Plaintiff's second contention. Here, neither Tracy nor any other juror received information from any source, outside or otherwise. *State v. Mack*, 855 S.W.2d 457, 459 (Mo.App. E.D.1993).

We now turn our consideration to Plaintiff's first contention, that the situation is comparable to cases in which someone present in the courtroom makes an inappropriate outburst during trial. Plaintiff cites *State v. Newson*, 898 S.W.2d 710 (Mo.App. W.D.1995), and *State v. Wilson*, 826 S.W.2d 79 (Mo.App. E.D.1992), as examples of similar outburst cases. In *Newson*, a witness blurted at the end of her cross-examination by the defense, "This man will kill again." 898 S.W.2d at 714. The Western District concluded the *Newson* trial court did not err in overruling the defendant's mistrial request in that situation because the Court did not find, as a matter of law, that the trial court's remedial action of ordering the comment stricken and disregarded failed to relieve any potential prejudicial effect of the witness's outburst. *Id.*

In *Wilson*, a spectator cried and yelled the name of the victim for about 35 seconds during the testimony of a forensic pathologist. 826 S.W.2d at 82. The trial judge overruled the defendant's request for a mistrial, but admonished the jury to disregard the spectator's outburst. *Id.* Acknowledging that the trial court was in the best position to assess the effect of the outburst and fashion a proper remedy, we found no abuse of discretion. *Id.*

The comment under consideration here differs from those in the cases cited by Plaintiff in that it was not made by a witness or bystander, but rather a juror. Furthermore, Tracy's comment does not reflect the extreme emotional level of the witness or bystander outbursts. We find the situation in *State v. Mack* most analogous to the circumstances at hand. 855 S.W.2d 457 (Mo.App. E.D.1993). In *Mack*, a juror "shushed" a defendant who continued to talk to jurors while the trial judge and parties' counsel conferred at sidebar. *Id.* at 459. When this behavior was reported to the judge, the defendant moved for a mistrial. *Id.* The trial court overruled the defendant's motion, excused the jury, and replaced the offending juror with an alternate. *Id.* We determined that, even assuming the juror's conduct indicated some displeasure with the defendant's

conduct, the defendant suffered no prejudice because the juror was replaced with an alternate. *Id.* We likewise conclude here that the trial court effectively cured any potential prejudice by Tracy's outburst by excusing her and replacing her with an alternate. We find no abuse of discretion in the trial court's decision not to declare a mistrial. *Id.*

Point denied.

### Conclusion

The judgment of the trial court is affirmed.

ROBERT G. DOWD, JR., J., and PATRICIA L. COHEN, J., concur.